**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NADINE MORRISON, | : | Civil Action No. |
| Plaintiff | : | |
| -vs- | : | **PLAINTIFF REQUESTS A TRIAL BY JURY** |
| GMRI, INC. d/b/a OLIVE GARDEN USA | : | **COMPLAINT** |
| Defendant. | : | |

Plaintiff, NADINE MORRISON ("Plaintiff" and/or "Ms. Morrison"), by and through her undersigned counsel, hereby files this Civil Action Complaint against Defendant GMRI, INC. d/b/a OLIVE GARDEN USA ("Defendant" and/or "GMRI"), and upon information and belief, avers the following:

## NATURE OF THE CASE

Plaintiff complains of race discrimination, hostile work environment, retaliation, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981 ("§ 1981"), and seeks damages to redress the injuries Plaintiff suffered as a result of Defendant's unlawful racial discrimination, harassment, and retaliation, which ultimately culminated in her wrongful termination following repeated complaints to management and Human Resources regarding discriminatory treatment in the workplace.

## JURISDICTION AND VENUE

1. This action involves questions of federal law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981 ("§ 1981").

2. Venue is proper in the Eastern District of Pennsylvania because Plaintiff was employed by Defendant at its Olive Garden restaurant located at 83 City Avenue, Bala Cynwyd, Montgomery County, Pennsylvania, where the discriminatory conduct and unlawful termination complained of herein occurred.

3. On or around July 22, 2026, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2026-08356, alleging, inter alia, race discrimination, retaliation, and wrongful termination.

4. On August 3, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights pertaining to her claims arising under federal law.

5. Plaintiff has therefore exhausted her administrative remedies pertaining to her federal claims under Title VII.

6. Plaintiff files this Complaint within ninety (90) days of her receipt of the EEOC's Determination and Notice of Rights.

## PARTIES

7. Plaintiff NADINE MORRISON ("Plaintiff" and/or "MORRISON") is an adult individual female who resides in Philadelphia, Pennsylvania, within the Commonwealth of Pennsylvania.

8. Defendant GMRI, INC. d/b/a OLIVE GARDEN USA ("Defendant" and/or "GMRI") is a business corporation authorized to conduct business within the Commonwealth of Pennsylvania, with its principal corporate offices located at 1000 Darden Center Drive, Orlando, Florida 32837.

9. At all times material, Defendant operated and/or controlled an Olive Garden restaurant located at 83 City Avenue, Bala Cynwyd, Pennsylvania 19004, where Plaintiff was employed.

10. At all times material, Defendant was Plaintiff's employer and exercised control over the terms, conditions, and privileges of Plaintiff's employment.

11. At all times material, Plaintiff was qualified for her position with Defendant and was capable of performing the essential functions of her employment.

12. At all times relevant to this Complaint, Defendant employed fifteen (15) or more employees and was an employer subject to the federal anti-discrimination provisions of Title VII of the Civil Rights Act of 1964, as amended.

13. At all times relevant to this Complaint, Defendant was subject to the provisions of 42 U.S.C. § 1981, which prohibits intentional racial discrimination in contractual relationships, including employment.

## MATERIAL FACTS

14. Plaintiff NADINE MORRISON is a Black/African American female who was employed by Defendant at its Olive Garden restaurant located at 83 City Avenue, Bala Cynwyd, Pennsylvania 19004.

15. Plaintiff previously worked for Defendant Olive Garden on several occasions. Most recently, on or around October 16, 2023, Plaintiff commenced employment with Defendant as a Hostess, earning approximately $16.00 per hour.

16. During her employment, Plaintiff received a wage increase to approximately $16.25 per hour.

17. At all times material, Plaintiff was qualified for her position, satisfactorily performed her assigned duties, and fulfilled the terms and conditions of her employment.

18. At all times relevant to this action, Plaintiff was a Black/African American female and a member of a protected class under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

19. At the commencement of her employment, Plaintiff was advised that she could request modifications to her work schedule and that Defendant would accommodate such requests.

20. Plaintiff had young children at home and sought a daytime work schedule that would better accommodate her family responsibilities.

21. Relying upon Defendant's representations concerning scheduling flexibility, Plaintiff requested that her assigned work schedule be modified to permit her to work daytime shifts.

22. Amber (Last Name Unknown) ("AMBER"), who was employed by Defendant as Plaintiff's Shift Manager and/or Supervisor and exercised supervisory authority over employee scheduling and work assignments, denied Plaintiff's request.

23. In response to Plaintiff's scheduling request, Amber made an explicitly racially discriminatory statement, advising Plaintiff that "no black persons" work the daytime shift.

24. Plaintiff understood Amber's statement to mean that Defendant assigned or denied work shifts based upon employees' race rather than legitimate business considerations.

25. Amber's statement was particularly offensive and humiliating to Plaintiff because it expressly referenced her race as a factor in determining the shifts she could work.

26. Plaintiff alleges that Amber made the racially discriminatory statement in the presence of other employees, further subjecting Plaintiff to humiliation and embarrassment in the workplace.

27. Following Amber's discriminatory remarks and refusal to modify her work schedule, Plaintiff reported the incident to Jim (Last Name Unknown) ("JIM"), who was employed by Defendant as the General Manager at the Olive Garden restaurant where Plaintiff worked and exercised supervisory authority over Plaintiff and the terms and conditions of her employment, and Sarah H. King

("KING"), who was employed by Defendant in a Human Resources management capacity and was responsible for addressing employee complaints concerning workplace discrimination, harassment, and retaliation.

28. Plaintiff specifically complained that Amber's conduct was racially discriminatory and that she was being subjected to unequal treatment concerning her employment opportunities because of her race.

29. Plaintiff requested that Defendant investigate Amber's conduct and take appropriate corrective action, including reprimanding Amber for her racially discriminatory statements.

30. Despite Plaintiff's complaints, Defendant failed to conduct a meaningful investigation or take appropriate remedial measures to address the discriminatory treatment.

31. Instead, Defendant disregarded Plaintiff's concerns and permitted the discriminatory workplace conditions to continue.

32. Plaintiff continued to complain to management and Human Resources regarding Amber's discriminatory conduct and Defendant's refusal to address her concerns.

33. Rather than acknowledging the seriousness of Plaintiff's allegations, Jim and King became visibly angry and hostile toward Plaintiff for continuing to complain about the discriminatory treatment.

34. In response to Plaintiff's complaints, Jim and King stated to Plaintiff, "If you don't like it, you can leave."

35. Their statement demonstrated Defendant's unwillingness to address Plaintiff's complaints and communicated that Plaintiff's continued opposition to discriminatory treatment was unwelcome.

36. Plaintiff was deeply disturbed and offended by Jim and King's response, particularly because the individuals responsible for addressing workplace discrimination instead dismissed her concerns and discouraged her from pursuing corrective action.

37. Despite the hostility toward her complaints, Plaintiff continued to raise concerns regarding the discriminatory treatment and unequal scheduling practices she experienced.

38. Between approximately October 2023 and September 2025, Plaintiff repeatedly complained to management and Human Resources regarding racial discrimination, harassment, and the hostile working conditions created by Amber's conduct.

39. Plaintiff alleges that Defendant was aware of the discriminatory treatment and harassment through her repeated complaints but failed to take prompt and appropriate corrective action.

40. Defendant's continued refusal to address Plaintiff's concerns permitted the discriminatory conduct to remain unresolved and contributed to an increasingly hostile and offensive working environment.

41. Plaintiff alleges that Defendant subjected her to unequal terms and conditions of employment because of her race, including discriminatory scheduling practices and the denial of employment opportunities afforded to employees outside her protected class.

42. Plaintiff's repeated complaints concerning racial discrimination and harassment constituted protected activity under Title VII and 42 U.S.C. § 1981.

43. Defendant, through its supervisory and Human Resources personnel, had actual knowledge of Plaintiff's protected activity.

44. Following Plaintiff's complaints, Defendant subjected Plaintiff to disciplinary action, including a written warning.

45. Plaintiff alleges that the disciplinary action was unwarranted and was imposed in retaliation for her repeated complaints concerning racial discrimination and harassment.

46. Rather than addressing the discriminatory treatment Plaintiff reported, Defendant escalated its adverse treatment of Plaintiff by subjecting her to disciplinary action.

47. In September 2025, following Plaintiff's repeated complaints regarding racial discrimination and unequal treatment, Defendant terminated Plaintiff's employment.

48. Plaintiff alleges that her termination occurred after approximately two years of complaints concerning discriminatory treatment, harassment, and management's failure to address her concerns.

49. Following her termination, Plaintiff contacted the Olive Garden restaurant and attempted to speak with management regarding the circumstances surrounding her discharge.

50. Plaintiff alleges that Defendant's decision to terminate her employment was motivated by her race and her repeated opposition to unlawful discriminatory practices.

51. Plaintiff further alleges that Defendant's purported reasons for disciplining and terminating her employment were pretextual and were utilized to conceal Defendant's discriminatory and retaliatory motives.

52. Defendant's adverse employment actions followed Plaintiff's repeated complaints concerning racial discrimination, supporting an inference of a causal connection between Plaintiff's protected activity and her termination.

53. Plaintiff alleges that she would not have been subjected to the same disciplinary action and termination but for her repeated complaints regarding racial discrimination and harassment in the workplace.

54. Defendant knew or should have known that its conduct violated Plaintiff's federally protected rights under Title VII and 42 U.S.C. § 1981.

55. Despite this knowledge, Defendant failed to investigate Plaintiff's complaints, prevent further discriminatory treatment, or take appropriate remedial measures.

56. Defendant's conduct subjected Plaintiff to an intimidating, hostile, and offensive working environment and deprived her of the same terms, conditions, and privileges of employment afforded to employees outside her protected class.

57. Plaintiff alleges that Defendant's discriminatory conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a hostile working environment.

58. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and continues to suffer loss of income, salary, employment benefits, and other compensation associated with her employment.

59. Plaintiff further suffered emotional distress, humiliation, embarrassment, anxiety, inconvenience, loss of enjoyment of life, and other pecuniary and non-pecuniary losses as a result of Defendant's unlawful conduct.

60. Defendant's conduct was intentional, willful, malicious, and/or undertaken with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to all damages and relief available under applicable law, including punitive damages where permitted.

61. Plaintiff seeks reasonable attorneys' fees and costs pursuant to the applicable federal anti-discrimination statutes.

62. The foregoing facts constitute examples of the unlawful discrimination, harassment, retaliation, and other adverse treatment to which Defendant subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION FOR**
**RACE DISCRIMINATION UNDER 42 U.S.C. § 1981**

63. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

64. The Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981 ("§ 1981"), prohibits intentional racial discrimination in the making, performance, modification, and termination of contracts, including employment relationships.

65. Plaintiff is a Black/African American female and a member of a protected racial class under § 1981.

66. At all times material, Plaintiff was qualified for her position and satisfactorily performed the duties and responsibilities of her employment.

67. Defendant subjected Plaintiff to discriminatory terms and conditions of employment because of her race, including unequal scheduling practices, denial of employment opportunities, and ultimately termination of her employment.

68. Defendant's discriminatory treatment of Plaintiff was intentional and motivated by racial animus, as evidenced by the racially discriminatory statements made by Amber and Defendant's subsequent refusal to address Plaintiff's complaints.

69. Plaintiff's race was a but-for cause of the discriminatory treatment and adverse employment actions to which she was subjected.

70. Defendant's purported legitimate, non-discriminatory reasons for its adverse employment actions were pretextual and were utilized to conceal its unlawful discriminatory motives.

71. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and other pecuniary and non-pecuniary losses.

72. Plaintiff seeks all damages and relief available under § 1981, including compensatory damages, punitive damages where permitted by law, reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER 42 U.S.C. § 1981

73. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

74. The Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981, prohibits retaliation against employees who oppose racial discrimination in the terms and conditions of their employment.

75. Plaintiff engaged in protected activity by repeatedly complaining to Defendant's supervisory and Human Resources personnel regarding racial discrimination, harassment, and unequal treatment in the workplace.

76. Defendant, through its supervisory and management personnel, had actual knowledge of Plaintiff's protected complaints and opposition to racial discrimination.

77. Rather than investigating Plaintiff's complaints and taking appropriate corrective action, Defendant dismissed her concerns and subjected her to hostility for opposing discriminatory workplace practices.

78. Following Plaintiff's protected complaints, Defendant subjected Plaintiff to adverse employment actions, including unwarranted disciplinary action and the termination of her employment in September 2025.

79. Defendant's retaliatory conduct was causally connected to Plaintiff's protected activity, and Plaintiff would not have been subjected to the adverse employment actions but for her opposition to racial discrimination.

80. Defendant's purported legitimate, non-retaliatory reasons for disciplining and terminating Plaintiff were pretextual and were utilized to conceal its unlawful retaliatory motives.

81. Defendant's retaliatory conduct was intentional, willful, and undertaken with reckless indifference to Plaintiff's federally protected rights.

82. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and other pecuniary and non-pecuniary losses.

83. Plaintiff seeks all damages and relief available under § 1981, including compensatory damages, punitive damages where permitted by law, reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

**AS A THIRD CAUSE OF ACTION FOR**
**HOSTILE WORK ENVIRONMENT UNDER 42 U.S.C. § 1981**

84. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

85. The Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981, prohibits intentional racial harassment that is sufficiently severe or pervasive to alter the terms and conditions of an individual's employment and create an abusive working environment.

86. Plaintiff is a Black/African American female who was subjected to unwelcome racial harassment and discriminatory treatment during her employment with Defendant.

87. Plaintiff was subjected to racially discriminatory statements by Amber, unequal scheduling practices, and management's repeated refusal to address her complaints concerning racial discrimination in the workplace.

88. Plaintiff repeatedly reported the discriminatory treatment to Defendant's supervisory and Human Resources personnel, thereby placing Defendant on notice of the racial harassment and hostile working conditions.

89. Despite having actual knowledge of Plaintiff's complaints, Defendant failed to conduct a meaningful investigation or take prompt and appropriate remedial measures to prevent further discriminatory treatment.

90. Defendant's conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an intimidating, hostile, and offensive working environment.

91. Plaintiff was subjected to the hostile working environment because of her race, and Defendant's intentional racial discrimination deprived Plaintiff of the equal benefits, privileges, terms, and conditions of her employment.

92. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered emotional distress, humiliation, embarrassment, anxiety, inconvenience, and other pecuniary and non-pecuniary losses.

93. Plaintiff seeks all damages and relief available under § 1981, including compensatory damages, punitive damages where permitted by law, reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

**AS A FOURTH CAUSE OF ACTION FOR RACE DISCRIMINATION**
**UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

94. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

95. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), prohibits employers from discriminating against employees on the basis of race concerning the terms, conditions, and privileges of employment.

96. Plaintiff is a Black/African American female and a member of a protected class under Title VII.

97. At all times material, Plaintiff was qualified for her position and capable of performing the essential functions of her employment.

98. Defendant subjected Plaintiff to adverse employment actions, including discriminatory scheduling practices, unequal terms and conditions of employment, disciplinary action, and termination because of her race.

99. Plaintiff's race was a motivating factor in Defendant's decision to subject her to discriminatory treatment and terminate her employment.

100. Defendant's purported legitimate, non-discriminatory reasons for its adverse employment actions were pretextual and were utilized to conceal its unlawful discriminatory motives.

101. Defendant thereby unlawfully discriminated against Plaintiff because of her race in violation of Title VII.

102. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and other pecuniary and non-pecuniary losses.

103. Plaintiff seeks all relief available under Title VII, including back pay, front pay and/or other equitable relief, compensatory damages, punitive damages where permitted by law, reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

**AS A FIFTH CAUSE OF ACTION FOR RETALIATION**
**UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
*Against GMRI, Inc. d/b/a Olive Garden USA*

104. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

105. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), prohibits employers from retaliating against employees who oppose unlawful racial discrimination or complain about discriminatory employment practices.

106. Plaintiff engaged in protected activity under Title VII by repeatedly complaining to Defendant's supervisory and Human Resources personnel regarding racial discrimination, harassment, and unequal treatment in the workplace.

107. Defendant, through its supervisory and management personnel, had actual knowledge of Plaintiff's protected complaints and opposition to racial discrimination.

108. Rather than investigating Plaintiff's complaints and taking appropriate corrective action, Defendant dismissed her concerns and subjected her to hostility for opposing discriminatory workplace practices.

109. Following Plaintiff's protected complaints, Defendant subjected Plaintiff to materially adverse employment actions, including unwarranted disciplinary action and the termination of her employment in September 2025.

110. Defendant's retaliatory conduct was causally connected to Plaintiff's protected activity, and Plaintiff would not have been subjected to the adverse employment actions but for her opposition to racial discrimination.

111. Defendant's purported legitimate, non-retaliatory reasons for disciplining and terminating Plaintiff were pretextual and were utilized to conceal its unlawful retaliatory motives.

112. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and other pecuniary and non-pecuniary losses.

113. Plaintiff seeks all relief available under Title VII, including back pay, front pay and/or other equitable relief, compensatory damages, punitive damages where permitted by law, reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

**AS A SIXTH CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

114. Plaintiff hereby incorporates each and every allegation contained in the above paragraphs of this Complaint as fully as if they were set forth at length.

115. Title VII of the Civil Rights Act of 1964 prohibits employers from subjecting employees to racial harassment that is sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment.

116. Plaintiff is a Black/African American female who was subjected to unwelcome racial harassment and discriminatory treatment during her employment with Defendant.

117. Plaintiff was subjected to racially discriminatory statements, unequal scheduling practices, and management's repeated refusal to address her complaints concerning racial discrimination.

118. Plaintiff repeatedly complained to Defendant's supervisory and Human Resources personnel regarding the discriminatory conduct and hostile working conditions.

119. Despite having actual knowledge of Plaintiff's complaints, Defendant failed to conduct a meaningful investigation or take prompt and appropriate remedial measures to prevent further racial harassment.

120. The discriminatory conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an intimidating, hostile, and offensive working environment.

121. Defendant's conduct constituted unlawful racial harassment and created a hostile work environment in violation of Title VII.

122. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and continues to suffer emotional distress, humiliation, embarrassment, anxiety, inconvenience, and other pecuniary and non-pecuniary losses.

123. Plaintiff seeks all relief available under Title VII, including compensatory damages, punitive damages where permitted by law, reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial, together with interest, including but not limited to back pay, front pay, lost wages and benefits, compensatory damages, emotional distress damages, punitive damages where permitted by law, reasonable attorneys’ fees, costs and disbursements of this action, and such other legal and equitable relief as this Court deems just and proper.

Dated: October 30, 2026

**FREUNDLICH & LITTMAN, LLC**

By: *<u>/s/ Samuel Wilson, Esq.</u>*
Samuel Wilson Esq.
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215 545-8510
E: *sam@fandllaw.com*
*Attorneys for Plaintiff*